IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**KELLYMARIE GRIFFIN**, an individual,

        Plaintiff,

    v.

**CITY OF PORTLAND**, a municipal corporation, and **THERESA LAREAU**, an individual,

        Defendants.

No. 3:12-cv-01591-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Defendant City of Portland moved for summary judgment in this employment discrimination suit arising under Title VII and Oregon law. I held a hearing on September 19, 2013, at the conclusion of which I granted summary judgment [65] on all but two of the claims against the City, explaining my reasoning for the record. I took the remaining two claims under advisement, and subsequently denied summary judgment [70]. This opinion explains my conclusion that there is a genuine dispute of material fact as to whether Defendant City is liable

1 – OPINION AND ORDER

under Title VII for religious discrimination against Ms. Griffin under a hostile work environment theory.

## BACKGROUND

Ms. Griffin's employment discrimination suit is brought under a hostile work environment theory. The record on summary judgment, taken in the light most favorable to Ms. Griffin, shows that on several occasions she was subjected to verbal assaults on her religious beliefs by a coworker, Theresa Lareau.[1]

Ms. Griffin has been employed in a clerical position by the City of from at least 1992 to the present. (Griffin Decl. [53] ¶¶ 4–5, 80.) From October 2009 to July 2012 she worked at the Portland Parks and Recreation Department's Mt. Tabor Yard office. (Griffin Decl. [53] ¶¶ 12, 80.) During this time, Ms. Griffin and Ms. Lareau were two of a five-member clerical team at the Mt. Tabor office. Each member of the team had a desk in the same small office, so they sat in close proximity to one another on a daily basis. The record suggests that all five members of the team worked together closely, with Ms. Lareau acting as the team "lead," who gave out the work assignments.[2]

Ms. Griffin describes herself as "a devout Christian" whose faith is "the most important thing in [her] life." (Griffin Decl. [53] ¶ 1.) The record shows that on several occasions Ms. Lareau made comments to Ms. Griffin about her Christian faith. For example, Ms. Lareau allegedly referred to Ms. Griffin as "a wacko" because of her beliefs, and on at least one

---

[1] While Ms. Lareau is a defendant in this suit, the only claim against Defendant Lareau is a state law tort, wrongful use of civil proceedings. The conduct underlying the religious discrimination claims at issue here is distinct from, albeit factually related to, that claim. I have denied summary judgment on the claim against Ms. Lareau [65].

[2] Ms. Griffin does not allege that Ms. Lareau was her supervisor for purposes of liability under Title VII. The theory at trial will be based on discriminatory treatment by a co-worker, not a supervisor, and thus Ms. Griffin must prove the City's liability by showing that it knew or should have known of the discrimination and did not take sufficient action to prevent it. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

occasion told Ms. Griffin that God was "a figment of [her] imagin[ation]" and that she was "praying to something that didn't exist." (City's Mem. [42] Ex. 2 at 14:644–45; Ex. 33 at 5:194–96.) While Ms. Griffin explains that she tried her best to get along with Ms. Lareau, ultimately their working relationship deteriorated.

Also at issue in this case are allegations of frequent profanity in the Mt. Tabor office, including the use of God's and Jesus Christ's names as curse words. Ms. Griffin alleges that Ms. Lareau and other coworkers frequently used profanity in the office, and that this language is offensive to her because of her religious reliefs. In particular, because Ms. Griffin views the profane use of God's name as blasphemous, this language deeply offended her. Ms. Griffin alleges that, while she worked in the Mt. Tabor office, when she heard profanity she would often inform the speaker that this language offended her. She explains that most coworkers would make efforts to stop cursing in her presence once they were told of the reason for the offense. It appears that even Ms. Lareau may have made an effort to stop using God's name in vain for a time after Ms. Griffin explained that it was offensive to her for religious reasons.

On May 4th, 2011, Ms. Griffin and Ms. Lareau's already strained relationship fell apart in an angry outburst (the "May 4th outburst"). Ms. Griffin subsequently asked the City to formally investigate religious intolerance by Ms. Lareau. That day, members of the clerical team were in their office just before the lunch hour. While a coworker, Ms. Jackie Bride, was gathering her things to leave for the lunch break, Ms. Griffin let out a loud sneeze. Ms. Bride, startled, exclaimed "Jesus Christ!" She then left the office for her lunch break. (City's Mem. [42] Ex. 10, Griffin Depo. at 55:7–56:1.) Ms. Griffin, offended by Ms. Bride's reaction, commented to Ms. Lareau (the only other member of the clerical team still in the office), as follows: "I said that I objected to profanity of God's name. I said that this type of language is not professional, I find

3 – OPINION AND ORDER

it personally distasteful, and it is in violation of my religious convictions. I said if it didn't stop, I would make a complaint with management." (Griffin Decl. [53] ¶ 25.) Ms. Lareau responded strongly in what plaintiff describes as "a loud, angry voice," that "I'm sick of your Christian attitude, your Christian [expletive] all over your desk, and your Christian [expletive] all over the place." She continued by accusing Ms. Griffin of using her religion "for the attention." (Griffin Decl. [53] ¶ 25.) This outburst is at the heart of Ms. Griffin's religious discrimination claims.

Shortly after the May 4th outburst Ms. Griffin instigated a formal investigation into Ms. Lareau's religiously discriminatory and other unprofessional behavior. While the record on summary judgment does not reveal exactly how the City investigated the complaint or what it found, it appears that at the very least the City's human resources representatives interviewed Ms. Griffin, several coworkers, and—eventually—Ms. Lareau in connection with the complaint. (City's Mem. [42] Ex. 20 at 54:9–57:12.)

Ms. Griffin contends that the City of Portland is liable under Title VII and Oregon employment discrimination law because it (1) knew or should have known about the discriminatory actions of Ms. Lareau, and (2) took insufficient steps to prevent the harassing conduct. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

## LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party, drawing all inferences from the facts in her favor. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

The moving party bears the initial responsibility of informing the court of the basis of its motion and providing evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the non-moving party must "present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal quotation omitted). The non-moving party fails to meet its burden if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

Ms. Griffin has brought claims against the City under Title VII, 42 U.S.C. § 2000e-2(a), and the Oregon employment discrimination statute, Or. Rev. Stat. § 659A.030(1)(b). Both must meet the same legal standards, so I have analyzed them together. *See Ahmed v. Mid-Columbia Med. Ctr.*, 673 F. Supp. 2d 1194, 1206 (D. Or. 2009) (recognizing that a plaintiff must meet the same standards under Oregon law as would be required under Title VII). To prove unlawful harassment under a hostile work environment theory, a plaintiff must show that (1) she was subjected to verbal or physical conduct based on her protected status; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment or create a hostile work environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). In a case where the alleged discriminatory acts were taken by a coworker, rather than a supervisor, the plaintiff must also show that the employer is liable for the allegedly harassing conduct. *See Galdamez*, 415 F.3d at 1024. An employer may be liable for discriminatory conduct by the plaintiff's coworker of which it knows or should know if it does not take steps sufficient to prevent the offensive conduct from occurring or recurring. *Fuller*, 47 F.3d 1527.

To establish a prima facie case of employment discrimination under a hostile work environment theory, the plaintiff must show that a reasonable person "with the same fundamental characteristics" as the plaintiff would view the conduct as sufficiently severe or pervasive to create a hostile work environment.  *Fuller*, 47 F.3d at 1527; *Ellison v. Brady*, 924 F.2d 872, 878–79 (9th Cir. 1991).  It must be shown both that the plaintiff subjectively perceived the environment as hostile and that this perception was objectively reasonable.  *Fuller*, 47 F.3d at 1527.

Liability under Title VII will not arise from "simple teasing, offhand comments, and isolated incidents (unless extremely serious)," as such things "will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).  The Ninth Circuit has stated that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."  *Ellison*, 924 F.2d at 878.  The Supreme Court has set out several considerations for determining when the environment is sufficiently hostile: "circumstances may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys.*, 510 U.S. 17, 22–23 (1993).

## DISCUSSION

### I.     The Sham Affidavit Rule Does Not Apply

The City argues that the sham affidavit rule applies to the declaration [53] submitted by Ms. Griffin to support her opposition to summary judgment.  The sham affidavit rule, recognized by the Ninth Circuit in *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991), provides that a party cannot "create an issue of fact by an affidavit contradicting his prior deposition

6 – OPINION AND ORDER

testimony." *Id.* at 266. Unless the court makes a factual determination "that the contradiction was actually a 'sham,'"—that is, that the declaration "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment"—the rule is inapplicable. *Id.* at 267.

The City argues that certain statements in Ms. Griffin's declaration are contradicted by her deposition testimony and by testimony she gave in investigative interviews conducted by the City's human resources department.[3] For example, in one interview Ms. Griffin told the City's human resources representatives that profane language and inappropriate behavior in the office were "not prevalent . . . [but happened] enough to offend me." (Def's Mem. [42] Ex. 2 at 14:651–15:673.) This interview was conducted in June 2011, shortly after the May 4th outburst by Ms. Lareau. In her declaration, Ms. Griffin states that "Ms. Lareau routinely cursed, used profanity, said Jesus' name, and referenced God's name in anger." (Griffin Decl. [53] ¶ 14.) I interpret the City's argument to be that the allegation that this "routine" use of profanity by Ms. Lareau is contradicted by the earlier statement that such language was "not prevalent" in the office. I do not find the two to be contradictory, as profane language could be "not prevalent" in the office as a whole even if Ms. Lareau did "routinely" use such language. Having reviewed the portions of the record brought to my attention by the City, I find there is no contradiction between Ms. Griffin's deposition and interviews and her declaration sufficient to indicate that the declaration is a sham. While there are minor inconsistencies, these will weigh on Ms. Griffin's credibility rather than going to the sufficiency of the evidence at summary judgment.

---

[3] While investigating Ms. Griffin's complaints of religious intolerance, the City conducted two interviews of Ms. Griffin. The interviews were conducted in June and October of 2011. Subsequently, the City conducted a third interview with Ms. Griffin as part of an investigation into a complaint made against her by Ms. Lareau; this interview occurred in March 2012.

7 – OPINION AND ORDER

Furthermore, I find that the record on summary judgment contains other evidence of religious discrimination. Thus, it is not the declaration alone that creates a question of material fact, making the sham affidavit rule inapplicable. The record shows that the May 4th outburst was not the only incident of intolerant statements by Ms. Lareau. As discussed above, Ms. Lareau allegedly said to Ms. Griffin that God was a "figment of [her] imagination" and that she was "praying to something that didn't exist." The investigatory interviews and Ms. Griffin's deposition contain these and other facts that, if proved, could support a finding that Ms. Griffin experienced a hostile work environment.[4]

Consequently, I find that the sham affidavit rule is inapplicable. As such, I have considered the declaration [53] as part of the record on summary judgment.

## II. Ms. Griffin Has Alleged Conduct Sufficient to Support a Hostile Work Environment Claim

As discussed below, not every allegation of offensive conduct by Ms. Lareau and others will ultimately be pertinent to the question whether Ms. Griffin was subjected to a hostile work environment because of her protected status. However, I find that Ms. Griffin has shown sufficient evidence of religiously discriminatory conduct to make out a claim for hostile work environment religious discrimination as a matter of law. Consequently, I have denied the City's motion for summary judgment.

### A. *Actions Must Have Taken Place "Because of" Ms. Griffin's Religion*

Central to my decision is the statutory requirement that offensive conduct, to be actionable under Title VII, must have been engaged in "because of" the plaintiff's protected

---

[4] As discussed below, profane language may only be considered in the jury's determination of whether Ms. Griffin experienced a hostile work environment if it was used "because of" Ms. Griffin's protected status. Thus, I have taken into account the fact that some of the instances of profanity (including some usages of God's name in vain) will likely be found not to have occurred "because of" Ms. Griffin's religion and will thus not be included in this determination.

8 – OPINION AND ORDER

status. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin"); Or. Rev. Stat. § 659A.030(1)(b) ("It is an unlawful employment practice . . . [f]or an employer, because of an individual's . . . religion . . . to discriminate against the individual"). The Ninth Circuit has also used the term "based on" to convey this statutory requirement. *See Galdamez*, 415 F.3d at 1023. This reflects that various formulations of the same basic requirement—"because of," "based on," "but for," or "on account of" protected status—have often been used interchangeably by courts.

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), the Supreme Court recognized the hostile work environment theory of Title VII liability. In that case, the court reasoned that a "hostile or abusive work environment" can be actionable discrimination (under Title VII) where it affects a "term, condition, or privilege" of employment. *Id.* at 66–67 (quoting *Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir. 1982)). As noted, a plaintiff must show that (1) she was subjected to verbal or physical conduct "based on" her protected status; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the terms and conditions of employment. *Galdamez*, 415 F.3d at 1023.

Although I have found no Ninth Circuit case interpreting the standards for hostile work environment liability in a *religious* discrimination case, it is clear from other precedent that conduct that can give rise to liability is conduct that occurred "because of" a plaintiff's protected status. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001). While working out the proper inquiry for sex discrimination cases in the wake of *Meritor Savings*, courts struggled with the question whether "discrimination . . . based on . . . sex" included only sexually motivated conduct (such as

sexual advances or innuendo) or whether it could also include non-sexual gender-based discrimination. Courts concluded that conduct need not be explicitly of a sexual nature to be actionable; conduct that occurs "because of" the plaintiff's sex may give rise to liability even if it not of an overtly sexual nature. *See, e.g., Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990) (liability is possible even where conduct complained of does not contain sexual overtones); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 905 (1st Cir. 1988) (holding that actions "charged with anti-female animus" could contribute to a hostile work environment notwithstanding that they were "not explicitly *sexual*") (emphasis in original); *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988) ("Intimidation and hostility toward women because they are women" may give rise to liability); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (holding that "the plaintiff must show that *but for* the fact of her sex, she would not have been the object of harassment") (emphasis added).

The Ninth Circuit has recognized this "but for" or "based on" requirement in race discrimination cases. In *McGinest v. GTE Service Corp*, the defendant argued that certain events, such as the alleged differential treatment of African American employees from white employees by a certain supervisor, were not racially motivated, but instead occurred because of personality conflict. 360 F.3d 1103, 1113 n.5 (9th Cir. 2004). Recognizing that the record was not clear that the differential treatment was race-based, the Ninth Circuit emphasized that the presence or absence of race-based motivation was a question for the jury. *Id.* at 1113 n.5. Thus, it is clear that the motivation behind allegedly discriminatory actions is important to the question of liability in Title VII cases. Under the *McGinest* court's reasoning, if the supervisor would have treated the African American employees in the same way regardless of their race—because of a personality conflict—then his actions would not give rise to liability.

Other courts of appeals have applied this inquiry in the religious discrimination context. In *Alhallaq v. Radha Soami Trading*, 484 F. App'x. 293 (11th Cir. 2012), the Eleventh Circuit considered a hostile work environment claim brought by a Muslim woman. The court affirmed the suit's dismissal, finding that the plaintiff had "not plausibly alleged that the harassment, namely, the remarks that she was 'dirty' and for her 'to go to Hell' and 'burn in Hell,' and the playing of Christian gospel music, was done *on account of* her Muslim religion." *Allhallaq*, 484 F. App'x. at 296 (emphasis added). Similarly, in *Rivera v. P.R. Aqueduct and Sewers Auth.*, 331 F.3d 183 (1st Cir. 2003), the court addressed the question whether a "bawdy Christmas carol mentioning [the plaintiff's] name" sung by a coworker could support liability. 331 F.3d at 190. The court explained that "the question is not whether a religious person could find the song offensive; it is whether religious animus prompted [the coworker] to sing it to [plaintiff]." *Id.* The court affirmed the grant of summary judgment, finding (among other things) that the plaintiff had provided insufficient evidence that the alleged conduct occurred "because of" her religion. *Id.* at 189–91.

To say that conduct must have occurred "because of" the plaintiff's protected status is not to say that the absence of hostile *intent* insulates an employer from liability. The Ninth Circuit has clearly established that the lack of subjectively felt hostility (on the part of the supervisor or coworker engaged in the allegedly discriminatory actions) towards the plaintiff's protected status does not insulate an employer from liability. In *Ellison*, the Ninth Circuit noted in dicta that conduct may constitute sexual harassment "even when harassers do not realize that their conduct creates a hostile working environment" because even "[w]ell-intentioned compliments" can result in a woman feeling uncomfortable in the workplace. 924 F.2d at 880. Thus, if conduct occurred "because of" a plaintiff's protected status, even if the actor does not intend hostility or

even know that the conduct may be perceived as hostile, that conduct is relevant to whether the plaintiff experienced a hostile work environment.

### B. Whether Statements Were Made "Because of" Ms. Griffin's Religion is a Question of Fact

As such, it is a question of fact whether particular instances of offensive conduct in the Mt. Tabor office occurred because of Ms. Griffin's protected status. If the evidence ultimately shows that any particular alleged conduct did not occur "because of" her protected status, that conduct cannot support a claim under Title VII, no matter how subjectively offensive it was to Ms. Griffin.

The City argues that a single instance of religious intolerance is insufficient to give rise to liability, and that the May 4th outburst was the only time at which Ms. Griffin's religious beliefs were directly attacked.[5] Because the record shows that the May 4th outburst is not the only instance of hostility towards Ms. Griffin's religion alleged, this argument is unavailing.

It will be a question for the jury whether particular language or comments were used or made "because of" Ms. Griffin's protected status. As I view the record, there are two categories of conduct at issue in this case. The first is profanity. As alleged, there were two types of profanity used in the Mt. Tabor office: profanity that expressly implicated religious ideas, such as the use of God's name as a curse, and profanity that did not, such as simple expletives. It is alleged that Ms. Lareau and others used both types of profanity in the office, and that Ms. Griffin

---

[5] It is true that in the Ninth Circuit single instances of discriminatory treatment, unless "extremely severe," will usually not give rise to liability. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000). Cases in which the single instance has been found to be "extremely severe" rise to a level of outrageousness beyond what Ms. Griffin experienced on May 4, 2011. *See, e.g., Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967–68 (9th Cir. 2001) ("single incident" of rape was sufficient to support a claim); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) (sexual assault sufficient); *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989) (holding that noose hung above plaintiff's desk—a single incident—was not insufficient as a matter of law).

frequently asked them to refrain from doing so in her presence because it offended her for religious reasons. (Griffin Decl. [53] ¶ 14.)

A rational jury could find that at least some of this profanity occurred "because of" Ms. Griffin's religion, although I think it unlikely that the evidence will show that all of it did. For instance, it is unlikely that a coworker who used a curse word without knowing that the word offended Ms. Griffin for religious reasons used the word around Ms. Griffin because of her religion. Rather, such a coworker likely used the curse word without contemplating whether it would bother or offend anyone, merely because he or she was in the habit of using profanity.[6] Evidence that the coworker quickly apologized and refrained from cursing in Ms. Griffin's presence thereafter would bolster the argument that that coworker had not cursed because of Ms. Griffin's religious beliefs, although such evidence is not necessary. However, Plaintiff may be able to show that some of this profanity (particularly as used by Ms. Lareau) was uttered because of hostility to Ms. Griffin's religious beliefs. The burden is on the plaintiff to establish that conduct occurred because of religion, so Ms. Griffin must prove this as to any instances of profanity she wishes to use at trial to establish the hostile work environment.

The second category of conduct is direct hostility to Ms. Griffin's beliefs, such as Ms. Lareau's statement that Ms. Griffin was "a wacko" because of her Christian faith. (There are no allegations that anyone other than Ms. Lareau made such comments.) My denial of summary

---

[6] The record suggests that Parks and Recreation employees at the Mt. Tabor yard frequently used profanity out on the yard and in the office. Suggestions in the record that profanity was used even when Ms. Griffin was not present indicate that much of it was not motivated by her religious beliefs. As I interpret the guiding precedent, even the category of profanity that uses "God" or "Jesus Christ" as part of a curse does not necessarily trigger the "because of" standard. If the speaker used the terms out of habit, perhaps without even thinking their religious connotations, and not because of Ms. Griffin's beliefs, then such language would not satisfy the "because of" standard and could not be used to support the claim. *See Rivera*, 331 F.3d at 190. In the same way, "conduct need not be explicitly religious to constitute harassment because of religion." *Id.* at 190 n.2. Thus, statements or curses not explicitly invoking religion that were nevertheless made "because of" the plaintiff's religion may support liability.

judgment is largely based on the sufficiency of the evidence of such hostility in the record.  Ms. Lareau told Plaintiff that her "belief in God was foolish," (Decl. [53] ¶ 18); asked her whether she knew she "[was] praying to a figment of [her] imagination," (Decl. [53] ¶ 24); and, as part of the May 4th outburst, shouted that she was "sick of [plaintiff's] Christian attitude, [her] Christian [expletive] all over the place," *id.* ¶ 25).  The record shows at least half a dozen specific examples of hostility towards Ms. Griffin's religion, which, if proved, could support a rational jury's finding that Ms. Griffin was subjected to a hostile work environment.

Plaintiff will need to walk a fine line between events that occurred because of religion and events that occurred because Ms. Lareau did not appreciate having been complained about to the City.  Much of the hostility that occurred after the May 4th outburst may have occurred due to Ms. Lareau's anger at having been reported and investigated, rather than hostility to Ms. Griffin's religious beliefs.[7]  It is Plaintiff's burden to show that such conduct was based on Ms. Griffin's religious beliefs rather than on Ms. Griffin having reported Ms. Lareau to their employer, or some other motivation unrelated to religion.

It is of course also a question for the jury whether the conduct that it finds to have occurred "because of" Ms. Griffin's religion was sufficiently "severe and pervasive" to create a hostile work environment.  That the environment was subjectively perceived as hostile by Ms. Griffin is not in dispute.  Thus, the issue for trial will be whether the work environment would have been perceived as hostile by a reasonable employee with Ms. Griffin's fundamental characteristics.  *Fuller*, 47 F.3d at 1527; *Ellison*, 924 F.2d at 878–79.

---

[7] *See, e.g., Lockwood v. Donahoe*, No. 11-32, 2012 WL 1906555, at *5 (D. Alaska May 4, 2012) (noting that "with respect to Mr. Champion's other actions directed at [plaintiff] Ms. Lockwood, this court agrees with the defendant's assertion that those actions were not demonstrably race or gender based, but rather 'show that he was angry that [she] complained about him to the boss'").

14 – OPINION AND ORDER

**III.    There is a Dispute of Material Fact as to Whether the City Took Sufficient Action to Remedy the Religious Discrimination**

An employer can be liable for the creation of a hostile work environment by a non-management employee where it fails to remedy or prevent a hostile work environment of which it knew or should have known. *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1515–16 (9th Cir. 1989). The employer must take steps reasonably calculated to end the harassment. *Ellison*, 924 F.3d at 882. The Ninth Circuit applies a two-prong inquiry to the question whether an employer took sufficient steps to remedy such harassment:

> [T]the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment. In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers from unlawful conduct.

*Fuller*, 47 F.3d at 1528 (quoting *Ellison*, 924 F.2d at 882). This inquiry looks to efficacy; or whether the remedy stopped the harassing conduct, which includes a deterrence element. *Id*. However, the employer always has a duty to take *some* action. *Id*. at 1528–29.

The City argues that if Ms. Lareau did not express hostility towards Ms. Griffin's religious beliefs (notwithstanding that she expressed personal hostility) after the May 4th outburst it must have taken action sufficient to remedy the harassment. However, that an alleged harasser desisted from the complained-of conduct of his own accord is not enough to show that an employer has met its remedial obligation. *See id.* at 1528–29. Thus, this argument is unavailing.

It is undisputed that the City did make some investigation into complaints by Ms. Griffin brought after the May 4th outburst. Ms. Griffin argues that the City failed to take any remedial measures to remedy *religious intolerance*, notwithstanding that it conducted investigations into "discourteous treatment and inappropriate conduct." (Pl's Resp. [54] at 19.) While I find Plaintiff's allegation that at the initial human resources interview she was "not asked questions

15 – OPINION AND ORDER

about Ms. Lareau's discriminatory behavior toward me based on religion" to be only technically correct,[8] I do find that there is a dispute of material fact as to whether the City did enough to "end the harassment." *Hacienda Hotel*, 881 F.2d at 1516.

The record on summary judgment does not fully establish whether the City investigated the claimed *religious* intolerance specifically during its initial investigation,[9] and the City does not dispute that it did not investigate religious intolerance during its later investigations. The City explains that it did not include these claims in the later investigations because Ms. Griffin had told human resources that direct attacks on her religious beliefs by Ms. Lareau had stopped. Viewing the record in the light most favorable to Ms. Griffin, I find that there is a question of fact as to whether the City's investigation and remedial action were sufficient. If, as Plaintiff contends, the City insufficiently investigated the religious intolerance aspect of her initial complaint and then did nothing to prevent the underlying discrimination from recurring; and there was no further investigation even when Ms. Griffin informed human resources that religious hostility stemming from the May 4th outburst and other events had not dissipated, then the jury could find that the City failed to remedy the discrimination.

---

[8] The transcript of the June 30, 2011 interview shows that Ms. Griffin explained the issue of religious intolerance to the human resources investigators. That she brought the issue up on her own, rather than having been "asked questions" about it, is not, in my view, enough to support the broadest reading of her argument: that the City did not look into her religious intolerance complaint at all, even during her own interview.

[9] The City did not interview Ms. Lareau about Ms. Griffin's complaints until September of 2011, more than four months after the May 4th outburst. Once it did interview her, it appears that human resources did not ask Ms. Lareau about her actions directed at Ms. Griffin's religious beliefs. The City argues that its investigations and remedial action (it appears the City only reprimanded Ms. Lareau for raising her voice to Ms. Griffin and told her she would have to treat Ms. Griffin courteously in the future) were sufficient because Ms. Griffin's claims of religious intolerance were not corroborated. The record on summary judgment does not show whether Ms. Griffin's and Ms. Lareau's coworkers were asked about the allegations of ongoing religious tolerance, so I cannot say whether the City's argument will be borne out by the facts. (City's Mem. [42], Ex. 20 at 54:2–57:12.)

## CONCLUSION

As stated in my Order [70] of September 30, 2013, Defendant City of Portland's Motion for Summary Judgment [41] is denied as to claims one and three. There is a genuine dispute of material fact as to whether Plaintiff was subjected to a hostile work environment because of her religion and whether the City met its obligation to prevent and remedy the alleged religious discrimination.

IT IS SO ORDERED.

DATED this 25 day of October, 2013.

/a/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge