IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**KELLYMARIE GRIFFIN**, an
individual,

                      Plaintiff,

     v.

**CITY OF PORTLAND**, a municipal
corporation, and **THERESA LAREAU**,
an individual,

                      Defendants.

No. 3:12-cv-01591-MO

OPINION AND ORDER

**MOSMAN, J.**,

       Plaintiff KellyMarie Griffin brought this suit against her employer, Defendant City of

Portland ("the City"), alleging violation of Title VII, Oregon anti-discrimination law, and the

Age Discrimination in Employment Act ("ADEA").  I granted summary judgment [65] for the

City on six of Ms. Griffin's eight claims against it.  I denied summary judgment [70, 129] on Ms.

Griffin's claims for violation of Title VII, 42 U.S.C. § 2000e-2, and Oregon law, Or. Rev. Stat.

§ 659A.030(1)(b), under a hostile work environment theory ("the hostile work environment

claims").  These two claims against the City were tried to a jury beginning on November 5, 2013.

The jury returned a verdict [150] for Ms. Griffin, awarding $14,080 in non-economic damages.

(Verdict Form [150] at 2.)  Ms. Griffin now seeks attorney fees pursuant to Federal Rule of Civil

Procedure 54(d)(2) under 42 U.S.C. § 1988(b).

Also tried to the jury was Ms. Griffin's claim for the tort of wrongful use of civil

proceedings against Defendant Theresa Lareau.  The jury returned a verdict for Ms. Griffin

against Ms. Lareau, awarding economic damages in the amount of $5,300.  (Verdict Form [150]

at 4.)  There is no right to fee shifting for this claim, and Ms. Griffin seeks no fees from

Defendant Lareau.

Ms. Griffin also seeks to recover her costs from both Defendants.  (Mot. Fees & Costs

[156].)

For the reasons discussed below, Plaintiff's Motion for Attorney Fees and Costs [156] is

GRANTED in part and DENIED in part.

## DISCUSSION

### I.   <u>The Lodestar Standard for Recovery of Attorney Fees</u>

The baseline method for determining a reasonable fee under federal fee shifting statutes

such as the one relevant here, 42 U.S.C. § 1988, is to determine the hours reasonably worked and

multiply that by a reasonable hourly rate. *See Pennsylvania v. Del. Valley Citizens' Council for*

*Clean Air*, 478 U.S. 546, 563 (1986); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4

(9th Cir. 2001).  District of Oregon Local Rule 54-3 provides that the hourly rate is determined

using the most recent Oregon State Bar Economic Survey (the "Economic Survey").

#### A.    *Reasonableness of the Hourly Rates*

Ms. Griffin was represented by two attorneys in this litigation: Daniel Snyder and

Cynthia Gaddis.  Plaintiff urges the court to compensate Mr. Snyder at an hourly rate of $350.

Mr. Snyder graduated from the University of Notre Dame School of Law and has been practicing

in the civil rights and employment fields for approximately thirty five years.  (Decl. Snyder [158]

¶¶ 3–7.)  Defendants do not object to his hourly rate.  (Def.'s Resp. [166] at 6.)  As the hourly rate is within the range provided by the Economic Survey for attorneys of Mr. Snyder's experience, I find this hourly rate reasonable, and have calculated Mr. Snyder's time with reference to the rate of $350 per hour.

Plaintiff requests that Ms. Gaddis's time be billed at the hourly rate of $185.  Ms. Gaddis has been practicing law "for almost two years" and is a graduate of Lewis and Clark Law School.  For an attorney with less than three years of experience in private practice, the Economic Survey reports an average hourly rate of $182 per hour, a median rate of $175 per hour, and a 75th percentile rate of $198 per hour.  Defendant City urges the court to reduce Ms. Gaddis's hourly rate to $175/hour, or the median for an attorney of her experience, arguing that she has no special expertise or experience that justifies a higher than average hourly rate for her work.  Plaintiff opposes the reduction, arguing that Ms. Gaddis has experience opposing summary judgment motions in employment discrimination cases, as she has practiced primarily in this area of law for the past year.  (Pl.'s Reply [172] at 2–3; Supp. Decl. Gaddis [174] ¶ 5.)

I agree with Ms. Griffin.  A slightly higher than average hourly rate is reasonable in this case, as Ms. Gaddis has demonstrated some expertise in preparing plaintiffs' opposition to summary judgment in employment discrimination cases such as this one.  Ms. Gaddis attests that she has prepared four opposition memoranda on motions for summary judgment in employment claims in the last year, and that she succeeded in defending at least some claims against summary judgment in three of these four cases.  (Supp. Decl. Gaddis [174] ¶ 5.)  She attests that employment claims constitute approximately 90% of her current practice.  *Id.*  Thus, I find that a rate slightly higher than the average rate for attorney of her experience is appropriate.  I have calculated Ms. Gaddis's time with reference to the rate of $185/hour.

### B.    *Hours Reasonably Expended*

Plaintiff Ms. Griffin initially sought compensation for 214.5 hours of Mr. Snyder's time and 168.7 hours of Ms. Gaddis's time.  (Pl.'s Mem. [157] at 3–4.)  Plaintiff subsequently conceded that certain time entries initially included in this calculation documented tasks related exclusively to her wrongful use of civil proceedings claim against Ms. Lareau or were otherwise included in error, and consequently eliminated certain tasks from her requested fees.  (Pl.'s Reply. [172] at 2 n.1.)  As a result, she now seeks a total of 211.6 hours of Mr. Snyder's time and 167.7 hours of Ms. Gaddis's time.  When multiplied by the hourly rates discussed above, the result is $105,084.50 in attorney fees sought by Ms. Griffin.

The court is responsible for determining the reasonableness of a plaintiff's fee petition. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400–01 (9th Cir. 1992).  It is the fee claimant's burden to demonstrate that the number of hours spent was reasonably necessary to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).  The burden is on the fee claimant to submit documentation supporting the hours worked on the matter. *See Hensley*, 461 U.S. 433.

The Ninth Circuit has set out a specific inquiry for a district court's determination of whether attorney fees incurred in pursuit of claims on which the Plaintiff was not successful may be included in a fee award.  First, the court must determine "whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (internal quotation omitted).  Whether the claims are related turns on whether the claims "involve a common core of facts or will be based

on related legal theories." *Id.* (internal quotation omitted). "[T]he test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised." *Id.* (internal quotation omitted).

In *Odima*, the Ninth Circuit found that state tort claims were "related to" the plaintiff's successful Title VII and § 1981 claims because they "arose from a common core of facts—[the plaintiff's] employment relationship with [defendant] Westin." *Id.*  This reasoning is directly applicable here, as each of Ms. Griffin's employment discrimination claims arose from the same common core of facts.  I find that Ms. Griffin's unsuccessful employment discrimination claims are related to her hostile work environment claims, claims on which she was ultimately successful.  As such, time spent on each of the employment discrimination claims may be included in the lodestar calculation.

### 1.    Hours Attributable to the Wrongful Use of Civil Proceedings Claim

The parties are in agreement that hours expended exclusively on the wrongful use of civil proceedings claim are not recoverable.  However, the parties disagree as to whether certain documented hours are attributable only to this claim.  The City seeks a reduction of Mr. Snyder's time by 5.1 hours and a reduction of Ms. Gaddis's time by 3.7 hours on the grounds that certain billing records refer to hours expended on tasks pertinent only to the wrongful use of civil proceedings claim.  (Def.'s Resp. [166] at 7–8, 11, citing Exs. C, F.)  As noted, Plaintiff has conceded that a few of the billing records were erroneously included, but contests the exclusion of the additional hours identified by the City.

I agree with the City that certain hours still claimed by Ms. Griffin are attributable solely to the state tort.  This includes most of the hours identified in Defendant's Ex. C and some of the hours identified in Defendant's Ex. F.  The entries identified in Defendant's Ex. C include

discussions with the client regarding the stalking protective order, work done to oppose Ms.
Lareau's motion to dismiss for lack of jurisdiction [9], and time spent responding to Ms.
Lareau's discovery requests and filing a declaration pertinent only to the wrongful use of civil
proceedings claim.  I find that all of these tasks are attributable only to the wrongful use of civil
proceedings tort.  However, the time documented in entries 20–22 may properly be included, as
time spent scheduling Ms. Lareau's deposition and a Rule 16 conference is time spent on both
the employment discrimination claims and the wrongful use of civil proceedings claim.  Ms.
Lareau was a central witness in the employment discrimination claims as well as the wrongful
use of civil proceedings claim.  I have thus reduced Ms. Gaddis's time (*see* Def.'s Ex. C, p. 2) by
0.4 hours.

The entries identified in Defendant's Ex. F also include some hours properly attributable
only to the wrongful use of civil proceedings claim. As noted, Plaintiff has conceded that the
hours billed by Mr. Snyder should not have been included.  (Pl.'s Reply [172] at 2 n.1.)  I find
that the entries found at lines numbered 266, 268, 280, 283, 293, 302, 428, 442, 468–70, and
472–73 also should be excluded.  These time entries pertain to Ms. Lareau's proposed jury
instructions (pertinent only to the wrongful use of civil proceedings claim), her motion for an
extension of time [67], and her exhibits and deposition designations.  These 1.6 hours spent on
these activities were pertinent only to the tort claim, and not the hostile work environment
claims.

As such, Mr. Snyder's time is reduced by 4.2 hours and Ms. Gaddis's  time is reduced by
2.0 hours.

### 2.    Other Unnecessary Hours

The City asks the court to eliminate hours spent in connection with certain witnesses, in
pursuing settlement negotiations, and other miscellaneous tasks.

### a)    Potential Witness Asta Evans

Plaintiff's counsel has conceded that 2.0 hours billed as time spent deposing Asta Evans were included in error, as that deposition was cancelled.  (Pl.'s Reply [172] at 2 n.1.)  Ms. Evans did not ultimately testify at trial.  However, she was a coworker who worked closely with Ms. Griffin and Ms. Lareau and thus a potential material witness.  I find that Plaintiff's counsel reasonably expended 0.2 hours related to her planned deposition. I thus decline to reduce Mr. Snyder's time by the 0.2 additional hours identified in Defendant's Ex. I.

### b)    Potential Witness Sally Noble

The City seeks exclusion of hours associated with potential witness Sally Noble, who was not deposed and ultimately did not testify at trial.  (Def.'s Resp. [166] at 13.)  Ms. Griffin argues that such exclusion is inappropriate because Ms. Noble "had information relating to the work environment at Mount Tabor Yard that could have been used for Plaintiff's religious discrimination claim."  (Pl.'s Reply [172] at 9.)  Because Ms. Noble was a witness to events that occurred in the Mt. Tabor Yard, I find that hours spent in determining whether she should be called as a witness at trial are properly attributable to the hostile work environment claims. I thus decline to reduce Ms. Griffin's fee request by the hours identified in the City's Exhibit I.

### c)    Potential Witness Judith Clark/Pindar

Finally, the City asks that I eliminate hours spent in connection with potential witness Judith Clark/Pindar, whose testimony I excluded as irrelevant to the time period at issue in the hostile work environment claims.  (*See* Def.'s Resp. [166] Ex. I at 2.)  I determined that evidence of events that took place after Ms. Griffin had been moved away from the Mt. Tabor Yard office were not relevant to the hostile work environment claim. (Def. City's Mot. in Limine [96] at 11–12; Order [131] at 1.)  Consequently, Ms. Clark's testimony was excluded.  Because Ms. Clark's involvement in the events at issue began months after the time period giving rise to the

employment discrimination claims, I find that exclusion of hours spent in connection with her testimony is appropriate. I thus exclude hours identified in Defendant's Ex. I at 2: Mr. Snyder's time identified on lines number 197–99, 240–43, 250, 254, 273, 425 and 434[1]; and Ms. Gaddis's time identified on line number 145.  (*See* Def.'s Resp. [166] Ex. I.)  Mr. Snyder's time is reduced by 3.4 hours and Ms. Gaddis's time is reduced by 0.1 hours.

### d)    Settlement Negotiations

Plaintiff seeks compensation for 2.5 hours of Mr. Snyder's time spent pursuing the possibility of settlement.  The City argues that such time is not compensable, as "Plaintiff did not engage in any settlement negotiations" and only twice communicated with counsel for the City regarding settlement by email.  (Def.'s Resp. [166] at 14.)  Counsel for Plaintiff explains that, although neither Plaintiff nor the City ultimately made an offer of settlement, "Plaintiff's counsel needed to discuss the risks of trial, reasonable settlement amounts . . . and the settlement process" with Ms. Griffin before she could "give effective authorization to propose a settlement amount or not."  (Pl.'s Reply [172] at 9.)  I agree with Ms. Griffin, and allow compensation for time spent pursuing the possibility of settlement.  Counsel reasonably and necessarily apprises a client of the prospects of settlement during the pendency of a case; that the parties ultimately decide not to seek settlement before trial does not make the time so spent unreasonable or unnecessary.

### e)    Other Hours

Finally, the City asks that a total of 1.1 hours of Mr. Snyder's time and 1.1 hours of Ms. Gaddis's time, identified in Defendant's Ex. K, be excluded as "associated with activities not sufficiently identifiable with prosecution of Plaintiff's successful claims against Defendant

---

[1] I decline to eliminate the hours identified at line number 173 and line number 371, as they appear to be attributable to witnesses whose testimony was actually used at trial.

City." (Def.'s Resp. [166] at 14; Ex. K at 1–2.) I find that the hours are sufficiently identified to show that they were reasonable and necessary in connection with the case as a whole. As they were expended in connection with Ms. Griffin's successful claims against the City, recovery is appropriate.

### C.    *Lodestar Calculation*

As noted above, Ms. Griffin seeks compensation for 211.6 hours of Mr. Snyder's time. Having subtracted a total of 7.6 hours from Mr. Snyder's claimed hours claimed, I reach a total of 204 hours reasonably and necessarily expended. This number of hours is multiplied by Mr. Snyder's hourly rate of $350, the product being $71,400.

Ms. Griffin seeks compensation for 167.7 hours of Ms. Gaddis's time. I have subtracted a total of 2.1 hours from Ms. Gaddis's claimed time. As a result, the total amount of her time for which Ms. Griffin may recover is 165.6 hours. The product of this number of hours and Ms. Gaddis's hourly rate of $185 is $30,636.

Thus, the baseline lodestar amount is $102,036 in attorney fees.

## II.    <u>Limited Success on the Merits</u>

The City urges this court to reduce Ms. Griffin's fee recovery due to her limited success on the claims pled. It urges the court to utilize a complex formula to reduce Plaintiff's fee award based on (1) the fact that many hours must have been expended both on the employment discrimination claims and the wrongful use of civil proceedings claim; and (2) Plaintiff's success on only two of her eight employment discrimination claims at summary judgment.[2] As

---

[2] The City asks the court to first reduce counsel's time spent before summary judgment by half on the theory that half of counsel's time was spent prosecuting employment discrimination claims (there were eight such claims prior to my summary judgment ruling) and half was spent prosecuting the single claim for the state tort, because "half of [the time spent prior to the summary judgment hearing] was spent on Plaintiff's claim against Lareau." (Def.'s Resp. [166] at 9, Exs. D & E.) Then, the court is asked to reduce the difference again by 75 percent, because only two of the eight employment discrimination

discussed above, I granted summary judgment for the City on Ms. Griffin's Title VII and Oregon

law retaliation claims, Oregon whistleblower protection claims, and ADEA and Oregon age

discrimination claim. Thus, only two of eight claims against the City survived to trial. It is the

City's contention that a 75 percent reduction is warranted because only 25 percent of Ms.

Griffin's original claims were successful. The result of the City's requested reductions would be to

award Plaintiff "no more than" $44,354.60 in attorney fees. (*Id.* at 12–14, Exs. I, J & K.)

I decline to apply the City's broad cuts to Plaintiff's counsel's hours. As will be

discussed subsequently, I do find that some reduction is warranted by Ms. Griffin's limited

success. However, the City's formulation of the reduction is imprecise, overly broad, and

contrary to precedent. A "mathematical approach comparing the total number of issues in the

case with those actually prevailed upon" is not the appropriate method for calculating attorney

fees. *See Hensley*, 461 U.S. at 435 n.11. Moreover, the City's proposed mathematical

calculation would be illogical, as it gives as much weight to the single wrongful use of civil

proceeding claim as to all of the employment discrimination claims put together.

As discussed above, I find that Ms. Griffin's other employment discrimination claims

were related to the hostile work environment claims such that time spent in pursuit of the former

is properly included in her fee recovery for the latter. However, I may reduce fee recovery based

on a plaintiff's partial or limited success. *See Hensley*, 461 U.S. at 436 (internal quotation

omitted). If a plaintiff has "obtained 'excellent results,' full compensation may be appropriate,

but if only 'partial or limited success' was obtained, full compensation may be excessive. Such

decisions are within the district court's discretion." *Schwarz v. Secretary of HHS*, 73 F.3d 895,

---

claims survived summary judgment. (*Id.* at 9–10.) As to time spent subsequent to the summary judgment
ruling, the court is asked to reduce all hours by half, on the theory that half of counsel's time was spent
prosecuting the hostile work environment claims and half was spent prosecuting the wrongful use of civil
proceedings claim against Defendant Lareau through trial. (*Id.* at 12, Exs. G & H.)

901–02 (9th Cir. 1995) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.

1986)).  As the Supreme Court explained in *Hensley*, in complex civil rights litigation a plaintiff

may challenge "numerous . . . institutional practices or conditions" and succeed in "identifying"

(or proving) only  "some unlawful practices or conditions."  461 U.S. at 436.

      I decline to reduce the lodestar amount further to take account of the wrongful use of civil

proceedings claim.  As described in detail above, I have already excluded time entries associated

solely with that claim from the lodestar calculation.  Time spent on tasks pertinent to both the

employment discrimination claims and the hostile work environment claims is properly included

in Ms. Griffin's recovery.

      Part of the City's complex formula for reduction is that hours worked prior to the grant of

summary judgment be divided by the total number of employment discrimination claims,

necessarily arguing that Plaintiff's counsel must have spent an equal amount of time on each

claim.  I consider this highly unlikely.  As described above, Ms. Griffin's claims set out three

fundamental theories of liability: hostile work environment due to religious discrimination,

retaliation, and age discrimination.[3]  I find that a reduction of the extent requested by the City

would be inappropriate, as many hours would have been spent on all three theories of liability.

All arose from Ms. Griffin's employment relationship with the City and involved interactions

between many of the same people, including City management, City human resources personnel,

and Ms. Griffin's coworkers.  Much of the discovery involved depositions of witnesses who

testified to facts relevant to all three theories of liability.  Similarly, much of counsel's time spent

in briefing Ms. Griffin's opposition to summary judgment would have been spent on all three

---

[3] In her First Amended Complaint [30], Ms. Griffin sought to recover for the hostile work
environment claims in addition to religious retaliation under Title VII, 42 U.S.C. § 2000e-3 and Oregon
law, Or. Rev. Stat. § 659A.030(1)(f), whistleblower retaliation under Oregon law, Or. Rev. Stat. §
659A.199 and Or. Rev Stat. § 659A.203; and age discrimination in violation of the ADEA, 29 U.S.C
§ 621–34., and Oregon law, Or. Rev Stat. § 659A.030.

theories of liability.  Because a great number of the hours spent pursuing all three theories would have been spent even in the absence of the two theories on which Ms. Griffin was unsuccessful, and because such a mathematical approach is improper under our precedent, I decline to reduce Ms. Griffin's fee recovery based on the percentage of claims on which she prevailed.

However, it is clear that some of the recorded time is attributable to the unsuccessful employment discrimination claims.  For instance, at any given deposition, counsel would likely have asked witnesses at least some questions relevant only to the unsuccessful claims.  Counsel's hourly reporting does not delineate between the three theories in a way that allows this court to remove hours spent only on the unsuccessful claims with surgical precision.  Thus, I find it appropriate to reduce Ms. Griffin's fee recovery by a small percentage in order to account for time that was spent on the unsuccessful claims.  I find that a 20 percent reduction of the fees sought is warranted because of Ms. Griffin's limited success on the merits.

Ms. Griffin recovered $14,080 in non-economic damages on her hostile work environment claims. (Verdict Form [150] at 2.)  In comparison to the $150,000 in damages she sought, this recovery is fairly limited.  While the jury found that she had been subjected to a hostile work environment for which the City is liable, its limited damages award reflects its findings that Ms. Griffin was harmed thereby in a much more limited way than she claimed.

More importantly, Ms. Griffin did not succeed in proving two of her three fundamental theories of liability. Ms. Griffin's claims set out three theories of liability: first, that Ms. Lareau's religiously hostile actions created a hostile work environment and the City failed to take sufficient remedial action; second, that the City retaliated against Ms. Griffin for her complaints about the religious harassment by reclassifying her position at Mt. Tabor Yard[4]; and third, that

---

[4] Ms. Griffin's Oregon whistleblower protection claims were premised on the theory that her complaint about religious harassment was whistleblowing for which the City retaliated against her.

the City discriminated against Ms. Griffin based on her age when it reclassified her position at Mt. Tabor Yard.  Ms. Griffin prevailed on one of these three theories of liability.[5]  Moreover, these three theories of liability were premised on two essential alleged harms to Ms. Griffin: first, being subjected to a religiously hostile work environment, and second, losing her position at the Mt. Tabor Yard such that she had to move to work at a different park.

Ms. Griffin argues that the full amount of fees should be awarded because she obtained substantial recovery.  She argues that her recovery would not have been "significantly greater" even if she had succeeded in proving her retaliation and age discrimination claims "because her continued employment with Defendant City of Portland limited any claim to economic damages."  (Pl.'s Reply [172] at 8.)  While I have taken this possibility into consideration, I ultimately find it unpersuasive.  The City's decision to move Ms. Griffin from the Mt. Tabor Yard office to a position at a different park, which was further from her home and came with somewhat more onerous job requirements, was one of two core harms alleged.  Because all claims arising from this decision failed to survive summary judgment, Ms. Griffin did not recover in any way for the move to a different park office.  Although I decline to speculate as to whether or to what extent her damages would have been greater had these claims gone to the jury, it is clear that Ms. Griffin failed to recover for the hardship caused by being moved to a

_____

[5] Ms. Griffin's retaliation and age discrimination claims arose from events occurring, for the most part, after the events giving rise to her hostile work environment claims.  I granted summary judgment, finding that, although Ms. Griffin had made out a prima facie case of retaliation, she had not shown that the City's nondiscriminatory explanation for its decision to reclassify her position was pretextual.  (Tr. [66] at 41:6–15.)  *See McDonnell Douglas*, 411 U.S. 792 (1973); *Snead v. Metropo. Prop. & Cas. Ins. Co*, 237 F.3d 1080, 1092 (9th Cir. 2001) (*McDonnell Douglas* framework is federal procedural law and is to be applied to retaliation claims under Oregon law); *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 954, 965 (D. Or. 2011).  I also granted summary judgment on Ms. Griffin's age discrimination claims, finding that the record did not contain evidence sufficient to allow a rational jury to draw an inference of age discrimination.  (Tr. [66] at 41:16–42:2.)  *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207–08 (9th Cir. 2008).

13 – OPINION AND ORDER

different park office. She failed to prove that the City had taken any retaliatory action against her or that the City had discriminated against her because of her age. In the words of the *Hensley* Court, Ms. Griffin "identif[ied] o[ne] unlawful practice[ ] or condition[ ]"—a hostile work environment based on her religion—but did not prove the two others she alleged and pursued through summary judgment—retaliation and age discrimination by the City. *See Hensley*, 461 U.S. at 436.

A limited reduction of attorney fees is appropriate because it accounts for Ms. Griffin's failure to prove her retaliation and age discrimination theories, while allowing recovery for time that counsel spent in pursuit of both these theories and her ultimately successful hostile work environment theory. The bulk of counsel's time was "expended in pursuit of the ultimate result achieved." *Id.* at 435 (internal quotation omitted). I thus reduce the lodestar amount by 20 percent, which amounts to a reduction by $20,407.20. Ms. Griffin is awarded attorney fees in the amount of $81,628.80.

## III.   Costs

Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). "Costs" taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) (internal citation omitted). In her bill of costs, Ms. Griffin requests $350 in fees of the clerk, $525 for service of summons and subpoena, $3,673.50 for transcripts necessarily obtained for use in the case, $175.50 for printing, $284.64 for witness fees, $164.71 for legal research, and $20 for internet research. (Bill of Costs [160] at 1.) The witness fees are for Jacqueline Bride, Norma Roberts, Zachary Daniek, Sally Noble, Mary

Strayhand, and Judith Pindar/Clark.  Costs are sought against both the City and Defendant Lareau.  (Mot. Fees & Costs [156] at 2.)

The City raises several objections to these costs.  First, the City has sought the exclusion of witness fees and service fees for the potential witnesses discussed above.  For the reasons discussed above, I exclude the $61.47 witness fee for Judith Clark/Pindar from the total witness fees sought.  I also exclude $170 in service fees related to Ms. Clark's trial subpoena.  (*See* Decl. of Snyder [161] Ex. 4 at 1.)  I do not, however, exclude fees associated with an earlier subpoena of Ms. Clark, as Plaintiff was reasonable in seeking testimony from Ms. Clark during the discovery phase of the case.  *See id.* Ex. 3.  For the reasons discussed above, I decline to exclude any fees associated with Sally Noble or Pam Douglas.

The City also seeks exclusion of a rush fee associated with service on Robert Downing, a witness who testified at trial, arguing that a rush fee was "excessive and unnecessary."  (Def.'s Resp. [166] at 15; Decl. of Snyder [161] Ex. 4 at 2.)  I find that Plaintiff has not shown that it was necessary to serve Mr. Downing on short notice.  Mr. Downing's testimony was prominent in the case from the time of summary judgment on, so it should not have come as a surprise to Plaintiff that his testimony at trial would be necessary.  I thus exclude the $40 "rush" fee from allowable costs.

Second, the City argues that many of the allowed fees and costs should be reduced by half because there were two Defendants in this case.  (Def.'s Resp. [166] at 15.)  This factual contention is, of course, true.  However, costs are sought against both Defendants, so any taxing of costs is against both Defendants.  As such, the full amount of the following costs shall be taxed to both Defendants, with liability to be joint and several: $350 in fees of the clerk,

$3,673.50 for deposition transcripts, $315 in fees for service of subpoenas,[6] and $223.17 in witness fees.[7]

The City also objects to allowing costs for legal research, postage, and copies, as such costs are not taxable under 28 U.S.C. § 1920. The City correctly points out that legal research, postage, and copies not "necessarily obtained for use in the case" are not taxable under section 1920. *See Voice Stream PCS I, LLC v. City of Hillsboro*, No. 03-365, 2004 WL 848176, at *1 (D. Or. Apr. 13, 2004.) As Plaintiff has not provided sufficient detail to show that copying costs were necessarily obtained for use in litigation, rather than for counsel's convenience, copying costs will not be allowed. (*See* Decl. of Snyder [161] ¶ 8.)

After deducting fees for serving Ms. Clark before trial, the rush fee associated with Mr. Downing's testimony, fees for printing, and fees for legal research, Plaintiff is entitled to costs in the amount of $4,561.67. Such costs are taxable to Defendant City and to Defendant Lareau.

## CONCLUSION

For the reasons discussed above, Ms. Griffin's Motion for Attorney Fees and Costs [156] is GRANTED in part and Plaintiff's Bill of Costs [160] is GRANTED in part. The City is ordered to pay attorney fees in the amount of $81,628.80. All Defendants are ordered to pay costs in the amount of $4,561.67.

IT IS SO ORDERED.

DATED this ___11th___ day of March, 2014.


/s/ Michael W. Mosman ____
MICHAEL W. MOSMAN

---

[6] As noted, $170 associated with Ms. Clark's service in October 2013 and a $40 rush fee associated with Mr. Downing have been excluded from the total sought by Plaintiff.
[7] As noted, the $61.47 associated with Ms. Clark has been excluded from the total sought by Plaintiff.

United States District Judge